Filed 9/9/16  P. v. Brooks CA3

<u>NOT</u> <u>TO</u> <u>BE</u> <u>PUBLISHED</u>

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(San Joaquin)

----

| | |
|---|---|
| THE PEOPLE, | C080082 |
| Plaintiff and Respondent, | (Super. Ct. No. SF126236B) |
| v. | |
| ISAIAH BROOKS, | |
| Defendant and Appellant. | |

Defendant Isaiah Brooks pleaded guilty to voluntary manslaughter and admitted to a firearm enhancement, in exchange for dismissing certain charges, including a gang offense and enhancements.  He was sentenced to a stipulated 12-year term.  He now appeals, arguing his plea was invalid because his attorney rendered ineffective assistance in failing to move to set aside the gang allegations.  He reasons the preliminary hearing evidence was insufficient to support those allegations.  We conclude the evidence was sufficient to withstand a motion to set aside, and thus defendant's plea was not the result of ineffective assistance.  We therefore affirm the judgment.

# I. BACKGROUND

## A.    *The Shooting*

Defendant was one of six young men involved in a fatal shooting near a convenience store.  Two of them, defendant and codefendant Arthur Miller,[1] were charged together.  Many of the events surrounding the shooting were captured by surveillance video.

On the evening of February 10, 2012, defendant (who was 15 years old at the time), codefendant, and four other young men walked to a convenience store.  Defendant and three others entered the store, while codefendant and another waited outside.  The victim drove up and parked opposite the front door.  He got out and walked to the store.  One of the two young men outside opened the door for him and said, "What's up, what's up, cuz?"  The victim then walked inside.  The two outside talked, and one handed the other a pistol.

Inside, defendant confronted the victim saying:  "What's up, Crip?  What's up, Crip?"  The four inside then left the store and rejoined the two outside.  Codefendant said they were going to "knock [the victim] over."  The six then left and walked down an adjacent street.

The victim, after buying orange juice, left the store, got in his car, and drove down the same street the six young men had walked down.  Witnesses heard gunshots.  A video recording captured the driver's side window shattering.  The victim died of a gunshot wound to the neck.

A confidential informant recalled that on the night of the shooting she was at an apartment complex meeting a friend, when approximately five young men, including defendant, ran up and together said:  "We killed him.  We came up on him, we shot him."

---

[1] Though tried together, only defendant is a party to this appeal.  The other young men were charged separately.

Defendant said, "I killed [the victim]" and "I shot [the victim]." The group also told her the victim had switched from being a Crip to a Blood.

Following the shooting, the police interviewed several of the young men in the surveillance video. While none claimed involvement in the shooting, they provided details of the shooting and the fact that most, if not all, of the young men responsible were members of a group called "Mixx Team."

B.    *The Preliminary Hearing*

At the preliminary hearing, a gang violence unit detective, Mark Couvillion, testified as a gang expert. He opined that both defendant and codefendant were members of Mixx Team, a criminal street gang as defined by Penal Code section 186.22.[2] Under section 186.22, a criminal street gang is an ongoing group of three or more, with a common name or symbol, a primary activity of committing certain enumerated criminal acts (§ 186.22, subd. (f)), and having a pattern of criminal gang activity, as shown by the commission of certain enumerated offenses (predicate offenses) (§ 186.22, subd. (j)).

The expert explained that Mixx Team is a gang of over 10 members, and one of its primary activities is the commission or attempted commission of crimes enumerated in section 186.22. The expert noted two instances following the shooting where Mixx Team members were arrested. Five months after the shooting, defendant was arrested when found with a gun. On another occasion, codefendant was arrested when found in a park with two assault rifles. The expert added there could be more arrests he could not recall. Another testifying officer agreed that, "it seems like these young men handled guns, [and] passed guns around to each other."

---

[2] Undesignated statutory references are to the Penal Code.

The expert also testified to the requisite predicate offenses, explaining that Mixx Team came under the umbrella of East Side Crips,[3] a documented gang operating in Stockton's east side, and East Side Crips members have committed predicate offenses. He cited one East Side Crips member who was convicted of drug sales on December 9, 2007, and firearm possession on March 9, 2008; and another member who was convicted of firearm possession on March 3, 2010, and April 6, 2010.

In concluding Mixx Team came under the umbrella of East Side Crips, the expert relied on several factors. The expert relied on the statement of one young man (who was one of the six present at the shooting) to the police that he was a member of Mixx Team, which is part of East Side Crips. The young man had also said Mixx Team had a feud with the Bloods.

The expert also noted that Mixx Team would claim and hang out in "Market, Filbert, and Greenwood," an area associated with East Side Crips. Also, in June 2013 (a month before he was arrested in the park for having assault rifles), codefendant was seen by police wearing an "East Side" sweatshirt. Codefendant described himself as "the general" of Mixx Team.

The expert also relied on a photo from defendant's Facebook account showing six young men, including defendant, codefendant, and two others from the surveillance video. In the photo, one youth made a Crips hand sign, while another made an "M" sign for Mixx Team. The photo also had in overlaid text, "Mixx Team" and "Fucc Hem Squad." The expert noted the alternate spelling of "fuck," explaining that Crips avoid writing "ck," as it stands for Crip killer. "Being a Crip gang member, you write it 'c-c.' "[4]

---

[3] East Side Crips is used interchangeably with East Coast Crips.

[4] The expert explained the photo "shows a group that . . . call themselves Mixx Team being a part of East Coast Crips."

4

Summarizing his conclusion that Mixx Team fell under the umbrella of East Side Crips, the expert explained: "based on my experience, and dealing with East Side Crips, knowing the areas they control, like Filbert Arms, look[ing] at the area they're contacted with guns, combined with the statements of parties of East Side Crips, [¶] . . . [¶] [w]hen you put it all together looking at the photos and the statements . . . all the dots kind of start to connect." The expert conceded, "We're trying to decide whether we make Mixx Team separate, trying to make them their own group, or put them under that umbrella of East Coast Crips." But a moment later, he stated, "I believe [defendant] to be part of Mixx Team which falls under that umbrella of East Coast Crips."

Finally, the expert opined that defendant and codefendant were Mixx Team members and "intended to assist, further, or promote criminal conduct by gang members." The expert also opined that the shooting "was in furtherance, at the direction of, [or] in association with the criminal street gang." The expert noted the young men had promoted the gang before the killing, saying "What's up, Cuz?" ("Cuz" is a term Crips use.) Afterwards, they bragged about the killing, saying "We killed him. We came up on him, we shot him," and "I shot the [the victim]." The victim too had been an East Side Crip who, according to the confidential informant, had switched to the Bloods. He had a tattoo of "ES," for "East Side." The expert added there was also a reference to the victim being a "snitch."

C.    *The Plea Bargain*

On December 16, 2014, defendant pleaded guilty to voluntary manslaughter (§ 192 subd. (a)) and admitted to a firearm enhancement (§ 12022, subd. (a)). In exchange, various counts were dismissed, including the gang allegations. Following his

5

plea, defendant moved, unsuccessfully, to change his plea.[5] On July 16, 2015, he was sentenced to a stipulated 12-year term in state prison. After obtaining a certificate of probable cause, defendant filed a timely appeal on August 19, 2015.

## II. DISCUSSION

On appeal, defendant contends his plea was invalid because his attorney rendered ineffective assistance in failing to move to set aside the gang allegations. He reasons the preliminary hearing evidence could not support the gang allegations. And his counsel's failure to challenge those allegations forced him to accept a plea under the false belief he faced more serious penalties than he should have. We disagree.

A.      *Legal Standard for a Motion to Set Aside*

"[T]he showing required at a preliminary hearing is exceedingly low." (*Salazar v. Superior Court* (2000) 83 Cal.App.4th 840, 846.) An information will not be set aside "if there is some rational ground for assuming the possibility that an offense has been committed and the accused is guilty of it." (*Rideout v. Superior Court* (1967) 67 Cal.2d 471, 474.) Only if " 'there is a total absence of evidence to support a necessary element of the offense charged' " will the offense be set aside. (*People v. Plengsangtip* (2007) 148 Cal.App.4th 825, 835.) The evidence supporting each element of the charged crime " 'may be made by means of circumstantial evidence supportive of reasonable inferences on the part of the magistrate.' " (*Ibid.*) " 'Every legitimate inference that may be drawn from the evidence must be drawn in favor of the information.' " (*Ibid.*)

B.      *A Criminal Street Gang Under Section 186.22*

Section 186.22 punishes "[a]ny person who actively participates in any criminal street gang with knowledge that its members engage in or have engaged in a pattern of

---

[5] His arguments included that his attorney had induced the guilty plea, he was operating under duress, and his appointed counsel rendered ineffective assistance in misrepresenting that defendant's mother wanted him to take the plea deal.

6

criminal gang activity, and who willfully promotes, furthers, or assists in any felonious criminal conduct by members of that gang." (§ 186.22, subd. (a).) It also imposes additional punishment for felonies committed "for the benefit of, at the direction of, or in association with any criminal street gang." (§ 186.22, subd. (b).)

A "criminal street gang" is statutorily defined as (1) an ongoing association of three or more persons with a common name or identifying sign or symbol; (2) having as one of their primary activities the commission of one or more criminal acts enumerated in the statute; and (3) having members who either individually or collectively have engaged in a "pattern of criminal gang activity" by committing, attempting, or soliciting two or more enumerated offenses (predicate offenses) during the statutory period. (§ 186.22, subds. (e), (f), (j); *People v. Gardeley* (1996) 14 Cal.4th 605, 617, disapproved on other grounds in *People v. Sanchez* (2016) 63 Cal.4th 665, 686, fn. 13.)

To determine the nature of the gang's primary activities, the trier of fact may look to the gang's past and present criminal activities. (*People v. Sengpadychith* (2001) 26 Cal.4th 316, 323.) It may also consider the charged offense's circumstances. (*Ibid.*) But isolated criminal conduct is not enough. (*Id.* at pp. 323-234.) "Expert testimony based on an adequate factual foundation might also be sufficient." (*In re Alexander L.* (2007) 149 Cal.App.4th 605, 611.)

The criminal street gang elements may be established by the conduct of another subset of the same gang if a sufficient connection exists between the subsets. (See *People v. Prunty* (2015) 62 Cal.4th 59, 72.) A connection can include members " 'hang[ing] out together' " or " 'back[ing] up each other.' " (*Id.* at p. 78.) It can also include protecting the same territory or turf, or conducting "independent, but harmonious, criminal operations within a discrete geographical area." (*Id.* at p. 77.) Similarly, members professing or exhibiting loyalty to each other, and fluid or shared membership among subsets may also show a connection. (*Id.* at p. 78.) "In general, evidence that

shows subset members have communicated, worked together, or share a relationship (however formal or informal)" is sufficient. (*Id*. at pp. 78-79.)

C.      *The Preliminary Hearing Evidence Was Sufficient to Support the Gang Allegations*

Defendant raises an array of arguments as to why the preliminary hearing evidence is insufficient. As we explain, these arguments must fail.

1.      *Evidence supported an organizational or associational connection between East Side Crips and Mixx Team*

The prosecution used conduct of East Side Crips to establish Mixx Team as a criminal street gang. Defendant argues this was impermissible because the evidence did not establish that Mixx Team was a subset of East Side Crips. Viewed in the context of a preliminary hearing, we disagree.

The evidence supported the gang expert's opinion testimony that Mixx Team fell under the umbrella of East Side Crips. A Mixx Team member told police that Mixx Team is part of East Side Crips. Mixx Team members would frequent, and claim, "Market, Filbert, and Greenwood," territory associated with East Side Crips. After the shooting, codefendant (a Mixx Team member) was seen by police wearing an "East Side" sweatshirt. As the expert explained, "[w]hen you put it all together looking at the photos and the statements . . . all the dots kind of start to connect."

Combined, this evidence satisfies the minimal showing required for a preliminary hearing. (Cf. *People v. Ramirez* (2016) 244 Cal.App.4th 800, 815 [holding preliminary hearing evidence insufficient where testimony did not indicate the gangs "shared information, defended the same claimed turf, had members commonly present in the same vicinity, or otherwise behaved in a manner that would permit the inference of an associational or organizational connection among them," nor did the testimony show the gangs self-identified as members of the larger Sureño association].)

8

Defendant however notes that the gang expert conceded, "[w]e're trying to decide whether we make Mixx Team separate . . . or put them under that umbrella of East Coast Crips." But despite possible uncertainty as to where exactly Mixx Team and East Side Crips fell in a Crips hierarchy, there is sufficient evidence of a connection between the two groups. Indeed, the expert opined several times that Mixx Team fell under the umbrella of East Side Crips.

2.      *There was sufficient evidence of a pattern of criminal activity*

Defendant further argues the pattern of criminal activity was not established. He avers the expert did not provide the crimes and dates of the convictions of East Side Crips members. He is mistaken.

The preliminary hearing included testimony of four predicate offenses by East Side Crips. One member was convicted of drug sales on December 9, 2007, and firearm possession on March 9, 2008. Another member was convicted of firearm possession on March 3, 2010, and April 6, 2010.

These four predicate offenses satisfy the pattern of criminal activities element.[6] And because there is a sufficient connection between Mixx Team and East Side Crips, the predicate offenses apply to Mixx Team.

3.      *Mixx Team had as one of its primary activities the commission of one or more criminal acts enumerated in the statute*

Defendant further argues the evidence cannot establish either Mixx Team or East Side Crips as criminal street gangs because the primary activity element is lacking. We disagree.

---

[6] The time period requirements that one of the offenses occur after the effective date of the chapter and the last offenses occur within three years after a prior offense are also satisfied. (See § 186.22, subd. (e); *In re Nathaniel C.* (1991) 228 Cal.App.3d 990, 1001-1002.)

9

The gang expert opined that one of Mixx Team's primary activities was the commission or attempted commission of the statutorily enumerated offenses. That opinion was supported by two separate arrests of Mixx Team members: Five months after the shooting defendant was arrested with a gun, and on another occasion codefendant was arrested with two assault rifles.[7] There was also evidence that Mixx Team members handled guns and passed them around to each other. The shooting itself is also evidence of primary activity. (See *People v. Sengpadychith, supra,* 26 Cal.4th at p. 323 ["Nothing in this statutory language prohibits the trier of fact from considering the circumstances of the *present* or charged offense in deciding whether the group has as one of its primary activities the commission of one or more of the statutorily listed crimes"].)

Together these offenses comprise evidence of Mixx Team's primary activity and we cannot say there is a total absence of evidence as to this element. (See *People v. Vy* (2004) 122 Cal.App.4th 1209, 1225 [finding the existence of three violent felonies (including the charged offense) by a small gang over less than three months to be sufficient to satisfy the primary activities element].)

4. *There was evidence the murder was committed to benefit the criminal street gang*

Finally, defendant argues there was insufficient evidence that the shooting was committed to benefit the criminal street gang. We disagree.

The expert opined that the shooting "was in furtherance, at the direction of, [or] in association with the criminal street gang." Before the shooting, the young men taunted the victim, who had switched from Crips to Bloods: "What's up Crip?" and "What's up

---

[7] While the specifics of the offenses are not clear, it may be inferred that the offenses were in violation of section 25850, subdivision (a), carrying a loaded firearm, or section 29610, minor in possession of a firearm. "Every legitimate inference that may be drawn from the evidence must be drawn in favor of the information." (*Rideout v. Superior Court, supra,* 67 Cal.2d at p. 474.)

Cuz?"  After the shooting, they bragged about it:  "We killed him.  We came up on him, we shot him."  Defendant said, "I killed [the victim]" and "I shot [the victim]."  That the shooting was done to promote Mixx Team and East Side Crips and to punish disloyalty to the Crips is reasonably inferred.  The expert's opinion and accompanying evidence is evidence the shooting was committed to benefit the criminal street gang.  (See *People v. Vang* (2011) 52 Cal.4th 1038, 1048 [expert opinion that felony benefited a gang is permissible and can be sufficient to support a § 186.22 enhancement].)

In sum, as to each element of the gang allegations, there was at least some rational ground to support it.  For no element was there a total absence of evidence.  Therefore, we find the preliminary hearing evidence sufficient, as a matter of law, to withstand a motion to set aside.   Accordingly, defense counsel did not render ineffective assistance in failing to move to set aside the gang allegations.  (See *People v. Price* (1991) 1 Cal.4th 324, 387 [counsel's failure to make a futile or unmeritorious motion or objection is not ineffective assistance].)  Defendant's ineffective assistance claim fails.

### III.  DISPOSITION

The judgment is affirmed.

/S/

_____

RENNER, J.

We concur:

/S/

_____

NICHOLSON, Acting P. J.

/S/

_____

ROBIE, J.

11